2009 UT App 301

**LD III, LLC, Plaintiff and Appellant,**

v.

**BBRD, LC, a Utah limited liability company; Richard W. Davis, an individual; Mountain West Title Company; and BBRD, Inc., Defendants and Appellees.**

No. 20080839–CA.

Court of Appeals of Utah.

Oct. 22, 2009.

Denver C. Snuffer Jr., Steven R. Paul, and Daniel B. Garriott, Sandy, for Appellant.

Michael N. Zundel, James A. Boevers, and M. David Eckersley, Salt Lake City, for Appellees.

Before Judges THORNE, BENCH, and ORME.

BENCH, Judge:

¶ 1 Plaintiff LD III, LLC (LD III) appeals the trial court's order granting Defendants' motion to enforce a settlement agreement. LD III claims that the trial court abused its discretion in granting the motion because a binding settlement agreement was never created due to the lack of a meeting of minds and the lack of an adequate writing as required by the statute of frauds. We affirm.

## BACKGROUND

¶ 2 In August 2007, Defendant Richard W. Davis offered to purchase real property and water rights from LD III. The parties had a real estate purchase contract (the REPC) prepared, which listed the purchaser as "BBRD, Inc. and or Richard Davis."[1] Claiming that Davis had failed to comply with a requirement of the REPC, LD III refused to go through with the sale. Mr. Davis subsequently recorded a notice of interest against the subject property, and LD III initiated an action to remove the lien.

¶ 3 After several months of litigation, the parties began to discuss settlement of LD III's wrongful lien action. On July 9, 2008, counsel for both parties participated in a telephone conference regarding this settlement. According to affidavits submitted to the trial court by Defendants, a settlement was reached during that telephone conference. Three days after the telephone conference, Defendants' counsel sent an email to LD III's counsel regarding the terms of the settlement agreement. The email stated,

As [we] discussed with you on Wednesday, the parties to the *LDIII v. Davis, et al.* case have agreed to settle the case by

---

1. BBRD is a corporation affiliated with Mr. Davis.

completing the sale of the real property and water rights to [Mr. Davis] or his designee for the 1.2 million remaining owing under the purchase contract. Accordingly, the settlement agreement will consist of the escrow instructions and title company settlement statement for closing the transaction, along with a stipulation and order dismissing the lawsuit with prejudice, each party to bear its own attorney fees and costs.

¶ 4 Defendants' counsel subsequently sent LD III another email, which included drafts of the new closing documents. In this second email, Defendants' counsel explained that "Mr. Davis desires to have the different parcels conveyed to affiliated companies and designees as shown in the deed." The attached deed listed the grantees of the real property and water rights as five separate entities or groups of people: three limited liability companies affiliated with Mr. Davis; Mr. Davis and his wife as trustees of the R.W. Davis Family Protection Trust; and Stephen and Jennifer Sandstrom. Defendants' counsel later sent a third email to LD III's counsel inquiring about the time frame in which LD III intended to review the closing documents and the status of the litigation's remaining discovery.

¶ 5 After receiving these emails, LD III's counsel responded through email, writing, "[W]e also have a settlement which will make it unnecessary to waste time on discovery I believe. I cannot imagine a problem will occur which we cannot resolve in papering the settlement of this case." The parties agreed to extend the time for Defendants' responses to certain discovery requests, pending completion of the paperwork associated with the settlement. A day later, LD III's counsel sent another email to Defendants' counsel indicating that LD III's principal wanted another attorney to review the closing documents. In the same email, LD III's counsel stated, "However, I still retain the view that further discovery is unnecessary."

¶ 6 Despite additional inquiries, LD III's counsel did not respond to Defendants regarding the closing documents for three weeks. At that point, LD III's counsel sent another email to Defendants' counsel that stated, "[T]he terms of the proposed settlement are not acceptable to our client." The email also requested that the parties move toward completing discovery. LD III's counsel did not give Defendants a specific reason as to why LD III found the terms unacceptable.

¶ 7 When LD III did not respond to Defendants' requests to identify the unacceptable terms, Defendants filed a motion to enforce the settlement agreement with the trial court. In connection with this motion, Defendants filed affidavits from three attorneys who either represented them in the settlement discussions or drafted the closing documents for the real estate transaction associated with the settlement. In these affidavits and accompanying documents, Defendants set forth evidence that the parties had reached a binding settlement agreement containing the terms that were summarized in the first email. These affidavits also explained that the $1,200,000 purchase price reflected a $300,000 credit for LD III's previous sale of a parcel of land to an entity designated by Mr. Davis.

¶ 8 LD III opposed Defendants' motion and asserted that Defendants had changed the terms of the settlement agreement when they prepared the written documents and that this change thereby precluded a meeting of the minds between the parties. In response to Defendants' statement of facts, LD III admitted to Defendants' account of the July 9 telephone conference and the terms of the settlement that were agreed upon during that conference. LD III noted only that "[t]he Defendants changed these terms in the language of the documents they drafted and created a wholly different set of risks and problems." In response to Defendants' statement regarding the delivery of the closing documents, LD III stated that it "[is a]dmitted that drafts of closing documents and related materials were sent, however, it is not admitted the documents provided were in fact in conformity with either the original agreement or the agreement of the parties to settle the matter." In response to Defendants' contentions regarding LD III's counsel's statement that further discovery was

unnecessary, LD III stated, "Admitted. At the time, it was not discovered that Defendants had attempted to materially alter the agreement. As soon as that was discovered, notice was provided that the deal was off. Plaintiff has considered the additional terms to be a counteroffer."

¶ 9 At the hearing regarding the motion to enforce the settlement agreement, the trial court framed the issue to be resolved in this way: "I guess the question I have is if you concede or agree that you had a settlement but the documents don't conform to your settlement, do you intend to have the document, the closing documents conform to your settlement." LD III's counsel began his argument by stating, "We, we reached what we thought was an agreement that was going to be written up."[2] LD III's counsel later went on to say, "In the papering of the settlement we got a counteroffer that ... was rejected."

¶ 10 LD III's main contention before the trial court was that Defendants' substitution of the five separate entities as the purchaser constituted a material change from the original terms of the REPC and created a risk that LD III would be implicated in a tax evasion scheme. LD III repeatedly characterized this change in the purchaser as a counteroffer that LD III had rejected, which precluded the formation of an agreement. LD III also urged that the settlement agreement failed to satisfy the statute of frauds.

¶ 11 Upon learning about LD III's concern regarding the designated purchasers, Mr. Davis expressed his willingness to be the sole purchaser of the property. Defendants' counsel revised the closing documents to replace the five entities with Mr. Davis's name alone. Even though this would appear to have resolved LD III's expressed concern, LD III nonetheless refused to go through with the transaction.

¶ 12 Ultimately the trial court granted Defendants' motion to enforce the settlement agreement and ordered LD III to close the

real estate transaction. In doing so, it found that

> Defendant Richard W. Davis ... made no change to the settlement agreement with plaintiff [LD III] ..., material or otherwise. The settlement agreement is and always was that [LD III] would convey the subject parcels of real property and water rights to Davis *or his designee.* However, Davis has agreed to take title in his own name because the issue is not a material one.

(Emphasis added.) This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 13 "The decision of a trial court to summarily enforce a settlement agreement will not be reversed on appeal unless it is shown that there was an abuse of discretion." *Goodmansen v. Liberty Vending Sys., Inc.,* 866 P.2d 581, 584 (Utah Ct.App.1993) (internal quotation marks omitted). "Issues of formation, construction, and enforceability of a settlement agreement are governed by state contract law," *Brighton Corp. v. Ward,* 2001 UT App 236, ¶ 12, 31 P.3d 594, and "[t]he [underlying] issue of whether a contract exists may present both questions of law and fact, depending on the nature of the claims raised," *Cal Wadsworth Constr. v. City of St. George,* 865 P.2d 1373, 1375 (Utah Ct.App.1993), *aff'd,* 898 P.2d 1372 (Utah 1995). Whether the parties had a meeting of the minds sufficient to create "a binding contract is ... an issue of fact," *O'Hara v. Hall,* 628 P.2d 1289, 1291 (Utah 1981), which "[w]e review ... for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made," *Cowley v. Porter,* 2005 UT App 518, ¶ 42, 127 P.3d 1224 (internal quotation marks omitted). On the other hand, "[t]he applicability of the statute of frauds is a question of law to be reviewed for correctness." *Bennett v. Huish,* 2007 UT App 19, ¶ 9, 155 P.3d 917 (internal quotation marks omitted). "Thus, we affirm the granting of a motion to compel

---

2. In the hearing transcript, this statement is attributed to Defendants' counsel. However, the audio recording and the context of the statement make it clear that the statement was actually made by LD III's counsel. The speaker references his client, "Dee Mower,"—LD III's principal—and states that "she and her tax advisors looked at the memorandum of what they proposed she engage in ... [and] she's, she's fearful."

settlement if the record establishes a binding agreement and the excuse for nonperformance is comparatively unsubstantial." *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 479 (Utah Ct.App. 1989) (internal quotation marks omitted).

## ANALYSIS

¶ 14 LD III claims that the trial court abused its discretion in granting Defendants' motion to enforce the settlement agreement because the trial court's order was based on an erroneous finding that the parties had reached a meeting of the minds sufficient to create a binding settlement agreement. "Settlement agreements are governed by the rules applied to general contract actions." *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995). "It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract." *Richard Barton Enters. v. Tsern*, 928 P.2d 368, 373 (Utah 1996). Thus, a binding contract exists where it can be shown that the parties had a meeting of the minds as to the "integral features of [the] agreement" and that the terms are sufficiently definite as to be capable of being enforced. *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, ¶ 13, 94 P.3d 179 (internal quotation marks omitted).

¶ 15 LD III claims that the trial court erred in finding that the parties reached a meeting of the minds because LD III asserts that the parties never reached a common understanding as to the identity of the purchaser.[3] Specifically, LD III asserts that the parties agreed to follow the REPC, which identified the purchaser as "BBRD, Inc. and or Richard Davis." Defendants argue that LD III failed to marshal the evidence as required for challenging a factual finding on appeal. They also contend that the trial court correctly found that the parties always intended that the property be conveyed to Mr. Davis or his designee.

¶ 16 We acknowledge Defendants' claim that LD III failed to marshal the evidence as required by the rules of appellate procedure. *See generally* Utah R. App P. 24(a)(9). But even assuming that LD III adequately marshaled the evidence, there is no fatal flaw in the trial court's findings. The evidence shows an exchange of emails between the parties' agents where Defendants' counsel outlined the terms of a settlement agreement and indicated that the purchaser of LD III's real estate and water rights would be Mr. Davis or his designee. LD III's counsel confirmed the existence of a settlement agreement in his replying email without taking exception to that term or otherwise indicating any understanding to the contrary. Further, LD III's counsel repeatedly stated that additional discovery was unnecessary. The terms of the settlement agreement as contained in the emails are also generally consistent with the parties' prior transaction, in which the purchaser was an entity designated by Mr. Davis, and is also consistent with the REPC, which listed the purchaser as Mr. Davis or an affiliated entity or both. We therefore conclude that the trial court did not clearly err in finding that the parties had reached a meeting of the minds with respect to the identity of the purchaser sufficient to form a binding agreement.

¶ 17 LD III alternatively argues that the trial court erred in its conclusion that Defendants' substitution of five different entities for the original purchaser—"BBRD, Inc. and or Richard Davis"—was not a counteroffer that LD III rejected. We see no error in the trial court's conclusion. In his email, Defendants' counsel stated that Mr. Davis "desire[d]" to have the five entities be purchasers of LD III's property, and the evidence clearly shows that Mr. Davis did not insist that such occur. The expression of such a desire does not rise to the level of a counteroffer. *See, e.g.*, Restatement (Sec-

---

**3.** On appeal, LD III also argues that the parties never reached a meeting of the minds because LD III never accepted Defendants' offer of settlement in the first place. This claim was never presented to the trial court and is therefore unpreserved. *See Duke v. Graham*, 2007 UT 31, ¶ 26, 158 P.3d 540 ("In order to be preserved, an issue must be raised in the trial court such that the trial court has an opportunity to rule on the issue."). We therefore decline to review it. *See id.* ¶ 28 ("[B]ecause the issue has not been preserved, and because no justification for appellate review has been articulated, we decline to reach it.").

ond) of Contracts § 39 cmt. b (1981) ("A mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer.").

¶ 18 LD III also asserts that the settlement agreement failed to satisfy the statute of fraud's requirement that an agreement conveying real estate be in writing. Pursuant to the statute of frauds, "[n]o estate or interest in real property ... shall be created ... otherwise than by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." Utah Code Ann. § 25–5–1 (2007). However, "[t]he statute of frauds is a defense that can be waived by a failure to plead it as an affirmative defense, admitting its existence in the pleadings[,] or admitting at trial the existence and all essential terms of the contract." *Bentley v. Potter*, 694 P.2d 617, 621 (Utah 1984) (citations omitted).

¶ 19 LD III has waived the statute of frauds defense because it admitted in multiple instances that a settlement agreement had been reached with Defendants. These admissions appear in LD III's counsel's emails, written submissions to the trial court, and oral representations at the court hearing. Indeed, the entire thrust of LD III's argument before the trial court was that there was an agreement but that Defendants changed material terms when memorializing the agreement. The trial court therefore correctly disregarded LD III's defense of the statute of frauds because of LD III's admissions.

¶ 20 Furthermore, in light of the parties' binding settlement agreement, we find no abuse of discretion in the trial court's order. LD III's excuse for nonperformance essentially centers on its concern that conveying its property to five purchasers would constitute tax evasion. LD III's excuse is "comparatively unsubstantial," *see Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 479 (Utah Ct.App. 1989), given Mr. Davis's withdrawal of his request that the conveyance be directed to-

ward those different entities. The trial court therefore acted within its discretion in granting Defendants' motion to enforce the settlement agreement.

¶ 21 As a final matter, Defendants claim that they are entitled to an award of attorney fees on appeal because LD III's appeal is frivolous. Rule 33(a) of the Utah Rules of Appellate Procedure permits this court to award attorney fees to the prevailing party "if [we] determine[ ] that [the] ... appeal ... is either frivolous or for delay." Utah R.App. P. 33(a). "For purposes of these rules, a frivolous appeal ... is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). However, "[t]he sanction for filing a frivolous appeal applies only in 'egregious cases' with no 'reasonable legal or factual basis.'" *Cooke v. Cooke*, 2001 UT App 110, ¶ 14, 22 P.3d 1249 (quoting *Maughan v. Maughan*, 770 P.2d 156, 162 (Utah Ct.App.1989)). "[A]n unsuccessful appeal which is worthy of consideration is not an egregious case worthy of sanctions and, therefore, is not frivolous." *Munns v. Munns*, 790 P.2d 116, 123 (Utah Ct.App. 1990). Although LD III's appeal is unsuccessful, it does not rise to the level of an egregious case deserving of sanctions. We therefore deny Defendants' request for attorney fees.

CONCLUSION

¶ 22 We conclude that the trial court acted within its discretion when it granted Defendants' motion to enforce the settlement agreement. The trial court's factual finding that the parties had reached a meeting of the minds and thereby formed a binding settlement agreement is supported by the evidence and does not constitute an error. Furthermore, the expression of a desire to have LD III's property conveyed to five entities did not amount to a counteroffer that LD III could reject, and LD III has waived the statute of frauds defense because it admitted to the existence of the agreement. Finally, Defendants are not entitled to an award of

attorney fees because LD III's unsuccessful appeal is not frivolous.

¶ 23 Accordingly, we affirm.

¶ 24 WE CONCUR: WILLIAM A. THORNE JR. and GREGORY K. ORME, Judges.