2011 UT 79

**Daniel L. BERMAN and Steve W. Bond, Plaintiffs and Appellant,**

**v.**

**John A. YARBROUGH, Wyoming Lead Hydrographer/Commissioner and Water Commission Sheriff; and Jerry D. Olds, Utah State Engineer and Director of the Utah Division of Water Rights, Defendants and Appellees.**

**No. 20100085.**

Supreme Court of Utah.

Dec. 20, 2011.

Daniel L. Berman, Salt Lake City, for appellant.

Gerald H. Kinghorn, James S. Lowrie, and R.L. Knuth, Salt Lake City, for appellee John A. Yarbrough.

Mark L. Shurtleff, Att'y Gen., Michael M. Quealy, Norman K. Johnson, Asst. Att'y Gen., Salt Lake City, for appellee Jerry D. Olds.

Associate Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In this appeal, Daniel Berman challenges the denial of his Motion to Enforce the Memorandum Decisions and Orders of the Court (the Motion to Enforce or the Motion). As part of his initial action, Mr. Berman asked the district court for a declaratory judgment quantifying his Utah water rights. Mr. Berman also sought an injunction ordering a Wyoming water official to deliver this water to his property in Wyoming. The district court issued the declaratory judgment, but expressly reserved ruling on any enforcement issues. The court made no ruling regarding enforcement of the Utah water rights and did not order the Wyoming water official to undertake any action. Sometime later, after a different Wyoming water official denied Mr. Berman's request for the amount of water announced in the declaratory judgment, Mr. Berman filed the Motion to Enforce. In the Motion, Mr. Berman asked the court to order Wyoming water officials, including those who were not parties in the declaratory action, to deliver the amount of water quantified in the declaratory judgment. The court denied the Motion to Enforce and Mr. Berman filed an appeal.

¶ 2 We conclude that a motion to enforce cannot be used to address matters beyond the scope of the underlying judgment it seeks to enforce. In this case, the declaratory judgment merely quantified Mr. Berman's Utah water rights; it did not include any directive to the Wyoming water officials. Thus, there was nothing in the declaratory judgment to enforce against the Wyoming water officials. We therefore hold that Mr. Berman's Motion to Enforce was procedurally barred.

## BACKGROUND

¶ 3 Mr. Berman owns both Utah and Wyoming water rights that he uses on his property in Uinta County, Wyoming. These water rights impact the drainage of the Smith's Fork River, a river that originates in Utah and runs into Wyoming. The Utah water rights entitle Mr. Berman to divert and store water in China Lake, located in Utah.[1] Prior to 2002, Wyoming had recognized that Mr. Berman's Utah water rights allowed him to use 131 acre-feet of water in Wyoming under a 1901 priority and 87 acre-feet under a 1935 priority. Mr. Berman's Wyoming water rights, which have never been at issue in this case, allow him to take water directly out of Smith's Fork River near his Wyoming property.

¶ 4 Around 2002, Wyoming water officials determined that part of Mr. Berman's Utah water rights were not properly documented pursuant to Wyoming procedure.[2] The Wyoming officials therefore requested that Mr. Berman file a secondary permit in Wyoming to properly document his Utah water rights. Despite this request, Mr. Berman did not file a secondary permit. Thus, the Wyoming water officials began providing Mr. Berman with only 87 acre-feet of water, the portion of his Utah water rights that they considered to be properly documented in Wyoming.

¶ 5 Unsatisfied with the delivery of only 87 acre-feet of water, Mr. Berman filed a lawsuit in Utah's Third District Court against John Yarbrough, the Wyoming Lead Hydrographer who is charged with regulating the Smith's Fork River. In the suit, Mr. Berman sought both a declaratory judgment and injunctive relief. In his petition for a declaratory judgment, Mr. Berman asked the court to quantify his water rights. Specifically, he claimed to have the right to use all of the China Lake water, including additional water beyond the 87 acre-feet and the 131 acre-feet originally recognized by Wyoming. As part of his request for an injunction, Mr.

Berman asked the court to order Mr. Yarbrough to deliver all the water that he was entitled to pursuant to his Utah water rights, regardless of Wyoming's documentary or priority procedure.

¶ 6 In 2006, the district court concluded that it had "subject matter jurisdiction to determine and define [Mr. Berman's] Utah water rights." But the court specifically reserved ruling on the issue of "whether it can enjoin [the] conduct of [Mr. Yarbrough] occurring in Wyoming" until the "issue is presented directly by demonstrated conduct." Regarding any injunction or enforcement measure, the court stated that those were "issue[s] for another day." Thus, the court announced that "[i]t simply does not now reach the question of whether it can or should or will attempt to enjoin Wyoming officials' conduct in Wyoming .... [or] whether it can enjoin Wyoming officials from altering water amounts decreed in Utah."

¶ 7 The court then proceeded to quantify Mr. Berman's Utah water rights in two separate memorandum decisions, dated November 24, 2006, and June 27, 2007. In the November 2006 decision, the court stated that it "ha[d] no ability or jurisdiction to determine finally the interplay of Wyoming and Utah water rights." And the court announced that "[w]hile again [it] does not remotely believe it is in a position to tell Wyoming water officials how to do their job, or how to interpret Wyoming law, ... it believes that [Mr. Berman's] Utah water rights, adjudged and decreed, must be delivered by those Wyoming water officials." The court therefore stated that Mr. Berman's Utah water rights would not be subject to Wyoming priorities; but it reiterated that it did "not believe it ha[d] jurisdiction to halt the conduct of Wyoming water officials occurring in Wyoming, even if it is contrary to this court's opinion about what water they should deliver to [Mr. Berman]." Accordingly, the court

---

1. China Lake is located entirely in Utah and holds approximately 218 acre feet of water. Although China Lake is in Utah, the water from the lake is used entirely within the state of Wyoming.

2. State water officials are "in the nature of water police, whose duties are to protect the rights of

the lawful appropriators" and administer the distribution of water according to state law. *See Mitchell Irrigation Dist. v. Whiting,* 59 Wyo. 52, 136 P.2d 502, 509 (1943) (internal quotation marks omitted).

did not order Mr. Yarbrough or any Wyoming water official to undertake action concerning Mr. Berman's newly quantified water rights.

¶ 8 In the June 2007 decision, the court determined that Mr. Berman was entitled to multiple fills of China Lake, "up to the limit of 500 acre-feet (plus the 131.31 acre-feet from [the 1901 priority])." The court also stated that it "again decline[d] to rule anything about enforcement." These two decisions were then "incorporated into each other" and were announced to be "The Final Order." Neither Mr. Berman nor Mr. Yarbrough appealed from the declaratory judgment.

¶ 9 In 2007 and 2008, neither Mr. Berman nor Mr. Yarbrough raised any issues concerning enforcement of the district court's decisions. In 2009, however, another Wyoming water official denied Mr. Berman's request for water from a second fill of China Lake because he claimed that the water was stored "out of priority." Sometime thereafter, Mr. Berman filed the Motion to Enforce. In his Motion, he asked the court to order Mr. Yarbrough, "his subordinates, and Jade Henderson, his immediate supervisor, to honor the delivery and deliver the China Lake water to which [Mr.] Berman is entitled [to] under [the declaratory judgment]." [3]

¶ 10 In January 2010, the court issued an order declaring that it had "specifically reserved in the past on whether it could enjoin the conduct of Wyoming water officials." In addition, the court stated that it "ha[d] indicated it believed and continues to believe that [Mr. Berman's] Utah water rights are NOT subject to the Wyoming priorities." The court then held that it "does not have the jurisdiction to order Wyoming water officials, [Mr.] Yarbrough or anyone else, how to interpret this court's decree in conjunction with Wyoming water law." Thus, the court concluded that "[a]ny remedy [for Mr. Berman] must be undertaken in Wyoming or federal court." On this basis, the court denied the Motion to Enforce.

¶ 11 Mr. Berman timely appealed the denial of the Motion to Enforce. We have jurisdiction to hear this appeal pursuant to section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶ 12 We review procedural issues for correctness and afford no deference to the lower court's ruling.[4]

## ANALYSIS

¶ 13 On appeal, we must address whether the district court correctly denied Mr. Berman's Motion to Enforce. The district court

3. In his briefing to this court, Mr. Berman characterizes the Motion to Enforce as a petition for injunctive relief. But neither the Motion to Enforce nor the memorandum in support of the Motion referenced an injunction, the procedural rule regarding injunctions, see UTAH R. CIV. P. 65A, or the necessary factors that a party must demonstrate before receiving a temporary or permanent injunction, see *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 13, 128 P.3d 1151. Instead, the Motion to Enforce merely asked the court to issue an order enforcing the declaratory judgment. Because the Motion is not styled as a request for injunctive relief, did not include any standard for issuing injunctions, and failed to provide any argument that the standard was satisfied, we will treat it according to the way Mr. Berman styled it—as a motion to enforce. *Cf. Gillett v. Price*, 2006 UT 24, ¶ 8, 135 P.3d 861 ("[In the context of motions filed under rule 59 and rule 60 of the Utah Rules of Civil Procedure,] the form of a motion does matter because it directs the court and litigants to the specific, and available, relief sought. Hereafter, when a party seeks relief from a judgment, it must turn to the

[Rules of Civil Procedure] to determine whether relief exists, and if so, direct the court to the specific relief available. Parties can no longer leave this task to the court by filing so-called motions to reconsider and relying upon district courts to construe the motions within the rules." (citation omitted)); *see also Workers Comp. Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶ 13, 266 P.3d 792 ("By not indicating the rule under which he seeks relief, a movant shifts the burden of argument and research to the district court. Additionally, a movant's failure to specify the rule governing the motion is unfairly prejudicial to the opposing party, whose task in preparing a response to the motion is made more difficult." (citation omitted)). Thus, we reject Mr. Berman's characterization of the Motion as a petition for injunctive relief.

4. *See, e.g., State v. Candedo*, 2010 UT 32, ¶ 7, 232 P.3d 1008; *see also McRae & Deland v. Feltch*, 669 P.2d 404, 405–06 (Utah 1983) (applying a correctness standard of review to the denial of a motion for declaratory judgment on the ground that the motion was procedurally improper).

denied the Motion on the belief that it did not have "jurisdiction" to tell Wyoming water officials how to interpret the declaratory judgment under Wyoming water law. We begin by noting that it is unclear what the district court meant by its statement that it did not have "jurisdiction" to issue the enforcement order.[5] But because we hold that the Motion to Enforce was procedurally barred, we need not address whether the court would have had "jurisdiction" to grant the relief Mr. Berman sought.

¶ 14 Motions to enforce are not specifically recognized in the Utah Rules of Civil Procedure[6] and we have not previously addressed the scope or permissible use for such motions. A review of Utah case law, however, reveals that motions to enforce are appropriate *only* when a party fails to comply with his or her legal obligations.[7] A party's legal obligation may arise from either (1) a court order directing the party to perform a specific act[8] or (2) a binding settlement agreement where the party agrees to undertake certain actions.[9] As this case involves the ability to use a motion to enforce a court order, we address only the applicability of such motions in this context.

¶ 15 When a motion to enforce is based on a court order, the order must contain an "unequivocal mandate" directing the respondent to undertake some action.[10] An

5. The ambiguity of the district court's statement arises in light of the fact that we have characterized "jurisdiction" as "a many-hued term." *Chen v. Stewart*, 2004 UT 82, ¶ 35, 100 P.3d 1177 (internal quotation marks omitted). Indeed, we have recognized,

> The term jurisdiction embraces several concepts including subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographical area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res;* and the other conditions of fact [that] must exist which are … prerequisites [to] the authority of the court to proceed to judgment or decree.

*Id.* ¶ 35 n. 6 (internal quotation marks omitted); *see also People v. Lara*, 48 Cal.4th 216, 106 Cal. Rptr.3d 208, 226 P.3d 322, 328 (2010) ("When courts use the phrase lack of jurisdiction, they are usually referring to one of two different concepts, although … the distinction between them is hazy. A lack of jurisdiction in its fundamental or strict sense results in an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack jurisdiction (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (citations omitted) (internal quotation marks omitted)). Furthermore, "jurisdiction" can also encompass the court's equitable power or authority to act. *See Chen*, 2004 UT 82, 100 P.3d 1177, ¶ 39 (recognizing that a challenge to a court's "jurisdiction" could include subject matter jurisdiction or the court's equitable power or authority to grant the particular relief); *see also Riggins v. Dist. Court*, 89 Utah 183, 51 P.2d 645, 659 (1935) ("It is equally well settled that the granting or refusing to grant injunctive relief is a matter of [the court's] equitable jurisdiction."). Given these many possible meanings of jurisdiction, the district court's specific justification for denying the Motion to Enforce is not clear.

6. The closest applicable rule would be rule 70 of the Utah Rules of Civil Procedure. But rule 70 applies when a petitioner asks the court to hold the opposing party in contempt or to direct a specifically appointed third party to undertake some action directly ordered by the court. *See* Utah R. Civ. P. 70 (allowing for the court to "direct [a specific] act to be done at the cost of the disobedient party by some other person appointed by the court … [or to] adjudge the party in contempt").

7. See *Connell v. Connell*, 2010 UT App 139, ¶¶ 28, 31, 233 P.3d 836, for a case recognizing that where a court order directed a party to pay alimony, child support, and child care expenses, the district court had granted nine motions to enforce that court order. *See also, LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 20, 221 P.3d 867 (upholding the grant of a motion to enforce a settlement agreement entered into by the parties).

8. *See, e.g., Connell*, 2010 UT App 139, ¶ 28, 233 P.3d 836, (contemplating enforcement action for "an order of custody, parent-time, child support, alimony, or division of property in a domestic case" (internal quotation marks omitted)).

9. *See, e.g., LD III*, 2009 UT App 301, ¶ 20, 221 P.3d 867.

10. *See Korn v. Gulotta*, 186 A.D.2d 195, 587 N.Y.S.2d 960, 962 (N.Y.App.Div.1992) (stating that a motion to enforce is improper because the court order to be enforced "did not direct the respondents" to take specific action, so "the re-

unequivocal mandate or clear directive is necessary because "[a] court's power to enforce a judgment is confined to the four corners of the judgment itself." [11] And without a directive or unequivocal mandate, there is nothing for the court to enforce against the respondent party. In addition, a clear directive is necessary because a motion to enforce "cannot be used to take up matters beyond the contours of the judgment and thereby short-circuit the usual adjudicative processes." [12] So if there is no unequivocal mandate in the underlying judgment, a party filing a motion to enforce is really seeking a new legal ruling or a new determination. But a motion to enforce cannot be the basis for a new legal ruling.[13] Accordingly, if a court order does not contain a clear directive for a party to undertake a certain action, then a motion to enforce is procedurally improper.[14]

¶ 16 In this case, the declaratory judgment Mr. Berman seeks to enforce does not contain any directive for Mr. Yarbrough or any Wyoming water official to undertake some action. Indeed, in the declaratory judgment, the court explicitly declined to make any ruling regarding the enforcement of Mr. Berman's water rights. Therefore, the court did not order Mr. Yarbrough or the Wyoming water officials to deliver water according to Mr. Berman's Utah water rights. And without a directive or order targeted to Mr. Yarbrough or any other Wyoming water official, there is nothing in the declaratory judgment to be enforced.

¶ 17 Furthermore, to the extent that Mr. Berman sought to enforce the declaratory judgment against nonparties, such matters are also beyond the scope of the judgment.

In the Motion to Enforce, Mr. Berman asked the court to order Mr. Yarborough *and* "his subordinates, and Jade Henderson, his immediate supervisor," to comply with the declaratory judgment. But Mr. Yarborough's supervisor and subordinates were not parties to the declaratory judgment. Thus, even if the court had ordered Mr. Yarborough to undertake some action, enforcement of the declaratory judgment against the nonparties would be beyond the scope of the court's final order. And in this case, the declaratory judgment contained no order or directive to enforce against anyone, let alone officials who were never parties to the underlying action.

¶ 18 Because the declaratory judgment does not contain a clear directive, we are not persuaded by Mr. Berman's two arguments that his Motion was nonetheless procedurally proper. First, Mr. Berman contends that in the declaratory judgment, the court *essentially* ordered Wyoming water officials to deliver water pursuant to his Utah water rights. But Mr. Berman's reading of the declaratory judgment pushes the court's statements too far. Instead of issuing a directive in the declaratory judgment, the court made only vague pronouncements about the newly quantified water rights. Specifically, the court stated that it had no ability to "determine finally the interplay of Wyoming and Utah water rights." Therefore, the court announced that it only "believe[d]" that the water quantified in Mr. Berman's Utah water rights should be delivered by the Wyoming water officials. In addition, the court retreated from its most forceful pronouncement—that Mr. Berman's Utah water rights were not subject to Wyoming priorities—when it stated that this position was simply what the court "believed."

spondents did not violate an 'unequivocal mandate' previously imposed by the ... [c]ourt").

11. *Harvey v. Johanns,* 494 F.3d 237, 244 (1st Cir.2007); *see also* 30 Am.Jur.2d *Executions, Etc.* § 656 (2011) (stating that enforcement proceedings are appropriate only when parties "have failed to perform specific acts pursuant to [a] judgment").

12. *Harvey,* 494 F.3d at 244–45.

13. *See id.* at 244 ("A court's power to enforce a judgment is confined to the four corners of the judgment itself.").

14. *See Korn,* 587 N.Y.S.2d at 962 (finding a motion to enforce procedurally barred because it "did not contain an unequivocal mandate clearly and specifically directing the respondents therein to do, or refrain from doing, a particular act" (internal quotation marks omitted)); *see also APA Excelsior III, L.P. v. Windley,* 329 F.Supp.2d 1328, 1336–37 (N.D.Ga.2004) (stating that motions to enforce are inappropriate when parties seek to obtain relief that is beyond the scope of the court's underlying order); *Harvey,* 494 F.3d at 245 ("[W]hen a matter is beyond the scope of a judgment, no relief is available through a motion to enforce the judgment.").

Because these statements are far from clear directives, they did not create a legal obligation owed to Mr. Berman. And without a clear directive, the declaratory judgment lacks any order to be enforced against Mr. Yarbrough or any Wyoming water official.

¶ 19 Because the declaratory judgment does not contain an order for Wyoming water officials to undertake any action, Mr. Berman's Motion to Enforce essentially requests an order declaring how his Utah water rights should be interpreted under Wyoming water law. But such a determination was never made in the declaratory judgment, and motions to enforce cannot be used to "short-circuit the usual adjudicative processes." [15] Thus, because Mr. Berman really seeks a new legal ruling in the guise of an enforcement motion, his Motion to Enforce addresses matters beyond the scope of the declaratory judgment and is therefore procedurally improper.

¶ 20 Second, Mr. Berman asserts that the Motion to Enforce was actually a petition for injunctive relief, and was therefore proper as "[f]urther relief" under section 78B–6–406 of the Utah Code. Section 78B–6–406 provides that "[f]urther relief based on a declaratory judgment ... may be granted whenever necessary or proper." [16] This statute mirrors a federal statute granting "[f]urther ... relief based on a declaratory judgment." [17] Courts interpreting the federal statute have recognized it contemplates that a party may file for damages or for an injunction based on a declaratory judgment.[18]

¶ 21 Although we agree that section 78B–6–406 of the Utah Code allows a prevailing party to file a petition for injunctive relief based on a declaratory judgment, that is not what happened in this case. Indeed, we have stated that because the Motion was not styled as a petition for injunctive relief, did not include any standard for issuing injunc-

tions, and failed to provide any argument that the standard was satisfied, we will not construe it as a petition for injunctive relief.[19] Thus, we treat the Motion according to the way Mr. Berman styled it—as a motion to enforce. We therefore reject his argument that the Motion was actually a petition for an injunction and was accordingly proper under section 78B–6–406 of the Utah Code.

¶ 22 Further, to the extent that section 78B–6–406 allows a prevailing party to file a motion to enforce a declaratory judgment, such motions must nonetheless be properly styled and must seek proper relief. And as discussed above, for the enforcement of a declaratory judgment to be proper, the underlying judgment must contain an unequivocal mandate or clear directive for a party to undertake a certain action.[20] Thus, section 78B–6–406 does not relieve a party of its duty to properly style a motion and to bring a motion only when procedurally proper.

¶ 23 Because we decline to construe Mr. Berman's Motion as a petition for injunctive relief and because the declaratory judgment is devoid of any order or directive to enforce, we conclude that the Motion to Enforce that order was procedurally improper.

## CONCLUSION

¶ 24 We hold that Mr. Berman's Motion to Enforce was procedurally barred because a motion to enforce cannot be used to address matters beyond the scope of the underlying judgment. In this case, the declaratory judgment merely quantified Mr. Berman's Utah water rights; it did not direct any Wyoming water official to undertake any action. As the declaratory judgment did not include any directive to Wyoming officials, there was nothing for the court to enforce against them. Accordingly, the Motion to Enforce was procedurally improper.

---

15. *Harvey,* 494 F.3d at 245.

16. Utah Code Ann. § 78B–6–406 (2008).

17. *See* 28 U.S.C. § 2202 (2006).

18. *See, e.g., Horn & Hardart Co. v. Nat'l Rail Passenger Corp.,* 843 F.2d 546, 549 (D.C.Cir. 1988) ("[T]he very language of [28 U.S.C.]

§ 2202 indicates that the prevailing party in a declaratory judgment may seek further relief in the form of damages or an injunction.'').

19. *Supra* ¶ 9 n. 3.

20. *See supra* ¶ 15.

Associate Chief Justice DURRANT authored the opinion of the Court, in which Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Justice LEE joined.