2017 UT App 22

## THE UTAH COURT OF APPEALS

CHARLEY PATTERSON,
Appellee,
*v.*
JED KNIGHT AND ALISHA KNIGHT,
Appellants.

Memorandum Decision
No. 20150885-CA
Filed February 2, 2017

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 140906572

Erik A. Olson and Bruce R. Baird, Attorneys
for Appellants

J. Ryan Mitchell, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Memorandum Decision, in which JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

VOROS, Judge:

¶1     Jed Knight and Alisha Knight appeal a district court order granting Charley Patterson's motion to enforce a post-mediation settlement agreement. We affirm.

¶2     The underlying dispute between Patterson and the Knights stems from a joint-venture and profit-sharing agreement between the parties. Patterson sued the Knights for violation of the agreement to collect various sales commissions. The parties jointly moved to stay the action while they participated in mediation. After mediation the parties signed a handwritten settlement agreement (the Agreement). The Agreement contained nine provisions. Seven of the provisions pertained to

aspects of a new profit-sharing agreement and new management agreements. The eighth states, "Subject to drafting mutually acceptable settlement agreement w/ above provisions and mutual non-disparagement, and new GYN & Spearhead agreements."[1] The ninth states, "Upon execution of final settlement documents and new GYN and new Spearhead agmt. Parties will file a stipulated motion and order to dismiss litigation w/ prejudice."

¶3 Shortly after the parties signed the Agreement, Patterson sent the Knights a draft of a more formal settlement agreement (the Formal Agreement). Roughly one month later, the Knights informed Patterson in writing that they "cannot agree to the terms as drafted and [we] will be terminating the proposed agreement that was subject to an agreeable final agreement." Patterson then filed a motion to lift the stipulated stay, seeking court enforcement of the Agreement. The district court granted Patterson's motion, concluding that "the Agreement is enforceable and operates to settle the pending litigation." The district court dismissed the case with prejudice and the Knights timely appealed.

¶4 The Knights contend that the district court erred when it concluded that the Agreement was a final, enforceable settlement agreement that contained the essential and material terms of agreement between the parties to end the litigation. Specifically, the Knights argue that "the express language of the Mediation Agreement makes any final settlement 'subject to' the future drafting of a mutually acceptable final settlement agreement" containing specific terms.

---

1. Patterson & the Knights are also involved in two separate business entities together: Got Your Number, Inc. (GYN) and Spearhead, a general Utah partnership.

¶5 "The decision of a trial court to summarily enforce a settlement agreement will not be reversed on appeal unless it is shown that there was an abuse of discretion." *LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 13, 221 P.3d 867 (citation and internal quotation marks omitted). "Whether the parties had a meeting of the minds sufficient to create a binding contract is . . . an issue of fact," which we review "for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Id.* (omission in original) (citations and internal quotation marks omitted). We "affirm the granting of a motion to compel settlement if the record establishes a binding agreement and the excuse of nonperformance is comparatively unsubstantial." *Id.* (citation and internal quotation marks omitted).

¶6 "Settlement agreements are governed by the rules applied to general contract actions." *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995). A binding contract exists "where it can be shown that the parties had a meeting of the minds as to the 'integral features of [the] agreement' and that the terms are sufficiently definite as to be capable of being enforced." *LD III*, 2009 UT App 301, ¶ 14 (alteration in original) (quoting *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, ¶ 13, 94 P.3d 179). However, a contract "may be enforced even though some contract terms may be missing or left open to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 12, 78 P.3d 600 (citation and internal quotation marks omitted).

¶7 First we must determine whether "it can be shown that the parties had a meeting of the minds as to the 'integral features of [the] agreement'" and whether "the terms are sufficiently definite as to be capable of being enforced." *See LD III*, 2009 UT App 301, ¶ 14 (alteration in original) (quoting *Prince, Yeates*

*& Geldzahler*, 2004 UT 26, ¶ 13). The Knights argue that the Spearhead and GYN agreements are "essential, missing terms of a final settlement." However, the Agreement provides that the Spearhead and GYN commissions will be split "50/50." The Agreement also provides for the Knights' and Patterson's business responsibilities and how specific business expenses should be handled going forward, and it provides that the Knights would pay attorney fees and that Patterson would prepare an accounting.

¶8      The district court concluded that the Agreement "does set forth the essential terms of the parties' agreement and current intent to settle the lawsuit." The district court also concluded that when "the parties left mediation . . . they had agreed to the material terms of a settlement agreement and the terms are sufficiently definite to be enforced." We agree with the district court on both points. The Agreement clearly sets forth the parties' obligations for their business relations, including how commissions will be split in the future and each party's business responsibilities. The "terms are sufficiently definite as to be capable of being enforced." *See id.*

¶9      The Knights maintain that because the Agreement required a non-disparagement clause but did not address the specifics of such a clause, the parties entered into a mere agreement to agree. By this standard, it would be difficult to imagine any handwritten mediation agreement that would be enforceable. Non-disparagement clauses are common contractual provisions; omitting the precise language of such a clause is not akin to omitting integral features of an agreement such as price or quantity from a contract for the sale of goods.

¶10      The Knights also argue that the Agreement was not a final settlement agreement, because it was subject to the negotiation and execution of further agreements, which never happened. The Agreement concluded that it was "[s]ubject to drafting

mutually acceptable settlement agreement w/ above provisions and mutual non-disparagement, and new GYN & Spearhead agreements." "Words such as 'on condition that,' 'if,' and 'provided,' are words of condition, and in the absence of indication to the contrary, the employment of such words in a contract creates conditions precedent." *McArthur v. State Farm Mutual Auto. Ins. Co.*, 2012 UT 22, ¶ 32, 274 P.3d 981 (citation and additional internal quotation marks omitted); *see also Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex. Ct. App. 1994) ("Use of terms like 'provided that,' 'if,' or 'subject to,' usually indicate that a promise is not to be performed except upon a condition or happening of a stated event.").

¶11 We agree that the language "subject to" created a condition precedent to the finality of the Agreement; however, Patterson satisfied the condition precedent when he sent the Formal Agreement to the Knights. The Formal Agreement contained the GYN and Spearhead agreements and a mutual non-disparagement provision. As the district court found, the proposed Formal Agreement contained terms additional to those set out in the Agreement. But at that point, instead of seeking to tailor the Formal Agreement to better reflect the mediated terms, the Knights simply repudiated the Agreement altogether. The Knights cannot rely on their own failure to follow through with reasonable efforts to craft the contemplated written agreement to defeat the Agreement's precondition.

¶12 It is common for parties to later memorialize in a more formal document agreements created in mediation. This arrangement does not preclude the enforcement or finality of the agreement created in mediation so long as the terms are "sufficiently definite as to be capable of being enforced." *See LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 14, 221 P.3d 867. In *Zions First National Bank v. Barbara Jensen Interiors, Inc.*, this court affirmed the district court's grant of the appellee's motion to compel settlement. 781 P.2d 478, 479 (Utah Ct. App. 1989). In an

affidavit opposing the motion, the appellants claimed that they did not assent to an oral settlement during negotiation. *Id.* at 479–80. The affidavit stated: "At the time of [the settlement negotiations], *we believed* that no firm settlement was reached; rather *we understood* that terms of the settlement were to be prepared by counsel for [Zions] and put in writing to be signed by us, if we were in agreement to the terms as set forth in writing." *Id.* at 480 (second alteration in original) (internal quotation marks omitted). Once the appellee's counsel sent over a written settlement agreement, the appellants "decided not to enter into any settlement agreement and for that reason . . . refused to sign any settlement agreement." *Id.* (internal quotation marks omitted). However, because the appellants "actually agreed to the settlement" before the appellee's sent formal settlement documents, we held that the trial court did not abuse its discretion in compelling the settlement. *Id; see also Lawrence Constr. Co. v. Holmquist*, 642 P.2d 382, 383–84 (Utah 1982) (holding that an oral settlement agreement was valid and the fact that "the parties contemplated subsequent execution of a written instrument as evidence of their agreement" did not prevent the oral agreement from binding the parties).

¶13    Here, Patterson and the Knights similarly contemplated the later execution of formal settlement agreement documents. The parties indicated this intention with the language "[s]ubject to drafting mutually acceptable settlement agreement w/ *above provisions*." (Emphasis added.) The parties agreed on the essential terms of the settlement agreement, evidenced by their use of the term "above provisions."

¶14    Similar to the appellants in *Zions First National Bank*, the Knights "decided not to enter into any settlement agreement and for that reason . . . refused to sign any settlement agreement." *See* 781 P.2d at 480 (internal quotation marks omitted). However, because the Knights agreed to the provisions contained in the

Agreement, which were "sufficiently definite as to be capable of being enforced," *see LD III*, 2009 UT App 301, ¶ 14, "we cannot say the [district] court abused its discretion in compelling the settlement," *see Zions First National Bank*, 781 P.2d at 480.

¶15   Accordingly, the judgment of the district court is affirmed.

───────────