2018 UT App 36

# THE UTAH COURT OF APPEALS

ACC CAPITAL CORPORATION,
Appellant,
*v.*
ACE WEST FOAM INC., ACE WEST FOAM #3 INC., ACE WEST
TRUCKING INC., AND DONALD O. ROOKS JR.,
Appellees.

Opinion
No. 20160095-CA
Filed March 1, 2018

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 130900381

John A. Snow and Alex B. Leeman, Attorneys
for Appellant

Brennan H. Moss and John P. Mertens, Attorneys
for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1     ACC Capital Corporation (ACC) appeals the district court's denial of its motion for summary judgment and enforcement of a subsequent settlement agreement. The district court did not abuse its discretion in enforcing the settlement where the parties executed a Memorandum of Understanding (the MOU) during mediation, the terms of which were sufficiently definite to be enforced. Further, the district court's factual finding that there was no misrepresentation or mutual mistake of fact that would render the agreement null and void was not clearly erroneous. Accordingly, we affirm the enforcement of the settlement agreement.

BACKGROUND

¶2     The parties entered into a lease agreement concerning the use of "custom built trailer-mounted nitrogen generators" that are typically utilized in the oil and gas drilling industry. ACC sued Ace West Foam Inc. (Ace West), claiming that Ace West had breached the lease.

¶3     The parties submitted cross-motions for summary judgment, which the district court denied. The court determined that there were several "material fact disputes concerning [Ace West's] defenses and the amount of damages that may be owing to [ACC]."

¶4     After the court denied the summary judgment motions, the parties participated in court-ordered mediation. At the mediation session, the parties executed the MOU. The district court found that the MOU outlined the following terms:

> ACC will inspect and pick two of [Ace West's] foam compressor units, obtain possession of them, and then sell them with the two previously leased trailer-mounted nitrogen generators that were in the possession of [ACC]. . . . [The MOU] sets out a minimum sales price of $1,425,000 for the four items (two generators with two compressors), along with a schedule of what further consideration will be exchanged, depending on the ultimate sales price achieved. . . . If the units do not sell at the minimum price "then [Ace West] will pay ACC $125,000," which "is intended as damages if Ace West does not sell the four units."

¶5     The last provision of the agreement stated that the parties "will work in good faith and make reasonable efforts to bring about this resolution and settlement, including the preparation and execution of a more formal settlement agreement and

release of all claims, as well as stipulation and order for dismissal with prejudice."

¶6    After the mediation session, the parties exchanged correspondence to create a "more formal settlement agreement," as directed in the MOU. Ultimately, these negotiations broke down, and ACC sent a letter to Ace West purporting to withdraw its settlement offer.

¶7    Ace West subsequently filed a motion to enforce the MOU. The district court determined that the MOU was an enforceable settlement agreement, containing "proper legal consideration because performance or a return promise was bargained for by each of the parties." Furthermore, there was mutuality of agreement because "[b]oth parties executed the agreement," as well as mutuality of obligation because "ACC agreed to dismiss its claims in return for payment and performance on behalf of Ace West." The court concluded that the MOU contained "all of the material terms agreed to between the parties" and was "fully enforceable."

¶8    The court also rejected ACC's alternative argument that the MOU "should be set aside due to mistake, misrepresentation, or fraud" regarding the value of the foam compressors. The court made a specific factual finding that it did "*not* find credible any assertion by ACC that Ace West warranted that the foam compressors were worth any particular value."

¶9    ACC now appeals the district court's order granting the motion to enforce as well as its prior order denying summary judgment.

ISSUES AND STANDARDS OF REVIEW

¶10    ACC contends that the district court erred by enforcing the MOU and dismissing the case because (1) the MOU was not intended to be a final and enforceable agreement and (2) even if

it was, the agreement was based on false statements or mutual mistake concerning the value of the foam compressors.

¶11    "The existence of a contract is a question of law, to be reviewed for correctness." *McKelvey v. Hamilton*, 2009 UT App 126, ¶ 17, 211 P.3d 390. "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[1] *Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, ¶ 14, 374 P.3d 1064 (citation and internal quotation marks omitted). Accordingly, "we review the district court's interpretation for correctness, according no deference to the district court." *Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 16, 216 P.3d 352. Findings of fact regarding fraud or mutual mistake "will be set aside only if [they are] clearly erroneous." *Vandermeide v. Young*, 2013 UT App 31, ¶ 14, 296 P.3d 787. The district court's ultimate decision to enforce a settlement agreement is reviewed for abuse of discretion. *McKelvey*, 2009 UT App 126, ¶ 17.

ANALYSIS

 I. The MOU Constituted an Enforceable Settlement Agreement.

¶12    ACC contends that the district court abused its discretion by enforcing the MOU because that instrument was never intended to be a final settlement agreement. "An agreement of compromise and settlement constitutes an executory accord.

---

1. "When ambiguity exists, the intent of the parties becomes a question of fact," and we would review the district court's findings about such intent for clear error. *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139 (citation and internal quotation marks omitted). But in this case, we determine that the MOU is unambiguous and therefore interpret it as a matter of law.

Since an executory accord constitutes a valid enforceable contract, basic contract principles affect the determination of when a settlement agreement should be so enforced." *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 (Utah Ct. App. 1993) (citation and internal quotation marks omitted). "[A] binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of [the] agreement and that the terms are sufficiently definite as to be capable of being enforced." *LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 14, 221 P.3d 867 (second alteration in original) (citation and internal quotation marks omitted).

¶13    Here, a binding contract exists. The district court correctly determined that the MOU showed both that there was a meeting of the minds and that the terms of the agreement were sufficiently definite and capable of being enforced. First, the district court observed that both parties had signed the MOU, evidencing "a mutuality of agreement." Second, the court concluded that the terms of the agreement were sufficiently definite as to be capable of being enforced, where the MOU contained "a detailed settlement structure" concerning the foam compressors, minimum sales prices for these items, as well as further consideration to be exchanged between the parties.

¶14    ACC does not dispute that it signed the MOU, nor does it take issue with the district court's conclusion that the terms of that agreement are sufficiently definite as to be capable of being enforced. Instead, ACC argues that both extrinsic evidence and language in the MOU itself demonstrate that ACC did not intend to enter into a binding agreement. Neither argument convinces us that the district court erred in concluding otherwise.

A.    Extrinsic Evidence Cannot Overcome the Parties' Intent Reflected in an Unambiguous Agreement.

¶15    ACC argues that the district court's finding of mutual agreement was clearly erroneous because the facts surrounding

the mediation established that ACC did not intend to be bound by the MOU. Specifically, ACC points to its "undisputed refusal to sign a final agreement and insistence that a final agreement be deferred to a later time" as well as "the parties' post-mediation conduct."

¶16 The district court correctly ruled that the MOU was binding based on its unambiguous language. So long as the language within the contract is unambiguous, "a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 16, 52 P.3d 1179. "Before the court may consider extrinsic evidence of the parties' intent, . . . it must first conclude that the contract is facially ambiguous." *Wilson v. Johnson*, 2010 UT App 137, ¶ 8, 234 P.3d 1156.

¶17 To determine facial ambiguity, Utah courts apply a two-part standard. *Daines v. Vincent*, 2008 UT 51, ¶ 26, 190 P.3d 1269. First, the court must "review relevant and credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity." *Id.* ¶ 31. Second, after reviewing the extrinsic evidence, the court may find "ambiguity only if the competing interpretations are 'reasonably supported by the language of the contract.'" *Id.* (quoting *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995)); *see also Andersen v. Dep't of Corr.*, 2015 UT App 63, ¶ 9, 347 P.3d 21 ("Although district courts are required to review relevant and credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity, a finding of ambiguity after a review of relevant, extrinsic evidence is appropriate only when reasonably supported by the language of the contract." (citations and internal quotation marks omitted)).

¶18 Under this precedent, "even though we permit admission of extrinsic evidence to support a claim of ambiguity in contractual language, the claim must be plausible and reasonable in light of the language used." *Daines*, 2008 UT 51,

¶ 31 (citation and internal quotation marks omitted). In other words, "there can be no ambiguity where evidence is offered in an attempt to obscure otherwise plain contractual terms." *Id.*

¶19    Here, the district court heard extrinsic evidence regarding the mediation and the negotiations that followed. After hearing that evidence, the court ruled that the settlement was binding based on the MOU's unambiguous language, which contained "all the elements necessary to establish a written contract." The district court correctly limited its ruling to the face of the MOU because the extrinsic evidence did not support a plausible claim of ambiguity in light of the contractual language. Specifically, the signed MOU states that the parties "have now settled and compromised their claims and negotiated a resolution of their dispute . . . through the following terms." Extrinsic evidence that ACC did not want to enter into a final settlement agreement at mediation "may not be used to contradict the plain language of the contract." *Wilson*, 2010 UT App 137, ¶ 8. Because the MOU's plain language unambiguously states that the parties have settled their claims based on the terms it sets forth, the MOU establishes a meeting of the minds as to the agreement's integral features.

B.    Language Contemplating a More Formal Agreement Does Not Preclude the Enforcement of a Settlement.

¶20    ACC argues that "the MOU itself shows that it was never intended to be a final agreement" because it stated that the parties would "prepare and execute a final agreement in the future." To be precise, the MOU does not refer to a future "final" agreement but to a future "more formal" agreement. The last paragraph of the MOU states:

> The parties and their counsel will work in good faith and make reasonable efforts to bring about this resolution and settlement, including the preparation and execution of a more formal settlement agreement and release of all claims, as

well as stipulation and order for dismissal with prejudice.

¶21    This court's recent decision in *Patterson v. Knight*, 2017 UT App 22, 391 P.3d 1075, forecloses ACC's argument that this provision renders the settlement agreement unenforceable. In *Patterson*, this court held that a settlement agreement was final and enforceable even though it anticipated "the negotiation and execution of further agreements, which never happened." *Id.* ¶ 10. This court held that the mere fact that the parties "contemplated the later execution of formal settlement agreement documents" did not render the agreement reached in mediation unenforceable.[2] *Id.* ¶ 13. As this court noted, "[i]t is common for parties to later memorialize in a more formal document agreements created in mediation. This arrangement does not preclude the enforcement or finality of the agreement created in mediation so long as the terms are 'sufficiently

---

2. In *Patterson v. Knight*, 2017 UT App 22, 391 P.3d 1075, the language of the settlement agreement stated that it was "[s]ubject to" the drafting of a "mutually acceptable settlement agreement." *Id.* ¶ 2. The court determined that the "subject to" language created a condition precedent that was satisfied when Patterson sent the formal agreement to the Knights. *Id.* ¶ 11. Specifically, the agreement stated that it was "[s]ubject to drafting mutually acceptable settlement agreement w/ above provisions and mutual non-disparagement, and [additional agreements]." *Id.* ¶ 2. Here, the language in the MOU is even less helpful to ACC. Unlike the written agreement in *Patterson*, the MOU did not contain language signaling that the preparation of such documents was a condition precedent to the finality of the agreement. *See id.* ¶ 10. Instead of using words such as "subject to," "provided," or "on condition that," the MOU stated only that the parties and their counsel would work together in good faith to prepare a more formal settlement agreement.

definite as to be capable of being enforced.'" *Id.* ¶ 12 (quoting *LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 14, 221 P.3d 867).

¶22 Similarly, the fact that the MOU contemplated future preparation of more formal settlement documents does not undercut the district court's conclusion that the agreement was enforceable. The district court concluded that the parties reached agreement on the essential terms of the settlement and that those terms were set forth in sufficient detail to be enforceable. Consistent with *Patterson*, we uphold the district court's determination that "the fact that the parties anticipated preparing other more detailed documents does not prevent the existing [MOU] from being enforceable."

## II. The District Court's Factual Finding that the MOU Was Not Based on a Misrepresentation Regarding the Value of the Foam Compressors Is Not Clearly Erroneous.

¶23 Alternatively, ACC contends that, even if the MOU was a final and enforceable agreement, it was based on Ace West's false statement regarding the value of the foam compressors. ACC argues that the value of the compressors was a term or condition to settlement and that the contract is null and void because Ace West either misrepresented the value or the parties made a mutual mistake of fact regarding their value.

¶24 When a credible contract defense is alleged, such as fraud, courts may consider the content of the mediation in determining whether a settlement agreement was reached. *See Reese v. Tingey Constr.*, 2008 UT 7, ¶ 9, 177 P.3d 605. Here, the district court found that "the interests of justice require consideration of mediation evidence submitted by ACC in order to determine whether the [MOU] was induced by fraud or is unenforceable due to a material mutual mistake of fact."

¶25 Following an evidentiary hearing, the district court did "*not* find credible any assertion by ACC that Ace West warranted that the foam compressors were worth any particular

value." During the mediation session, Ace West expressed its belief "that the foam compressors were worth between $250,000 and $275,000 each." The district court held that this estimate was "within a reasonable range of value given the market at the time of the mediation" and that "Ace West reasonably believed" it was accurate. The mediator shared Ace West's valuation with ACC but did not "communicate any guarantee that the foam compressors were worth a particular value." The district court specifically found that "no one communicated at the mediation a guarantee or warranty about the value of the [foam compressors], and no one believed that Ace West had provided such a guarantee or warranty." To the contrary, "both sides recognized that the foam compressors could be worth a wide range of values." Therefore, the court concluded that "there are no credible facts supporting the claim that the [MOU] should be set aside due to mistake, misrepresentation, or fraud."

¶26   ACC argues that the district court's findings regarding the value of the foam compressors were not supported by the evidence. ACC insists that the "*only* evidence before the district court regarding the value of the foam compressors *at the time of the mediation*" was the testimony of its expert witness, who opined that the compressors were worth between $125,000 and $165,000.

¶27   "Determinations regarding the weight to be given to the testimony of expert witnesses are within the province of the finder of fact . . . ." *AmericanWest Bank v. Kellin*, 2015 UT App 300, ¶ 25, 364 P.3d 1055 (citation and internal quotation marks omitted). When making factual findings, "courts are not bound to accept the testimony of an expert and [are] free to judge the expert testimony as to its credibility and its persuasive influence in light of all of the other evidence in the case." *State v. Maestas*, 2012 UT 46, ¶ 200, 299 P.3d 892 (alteration in original) (citation and internal quotation marks omitted). On appeal, "we will not second guess a court's decisions about evidentiary weight and

credibility if there is a reasonable basis in the record to support them." *Barrani v. Barrani*, 2014 UT App 204, ¶ 6, 334 P.3d 994.

¶28    Here, there is a reasonable basis in the record to support the district court's rejection of the value calculated by ACC's expert. Ace West's valuation of the foam compressors was based, in part, on an appraisal conducted more than a year before the mediation, which placed the value of one of the units at $250,000. During the evidentiary hearing, the court heard expert testimony offered by both parties as to whether that appraised value was adversely impacted by a drop in oil and gas prices prior to the mediation. ACC offered expert testimony that there had been a significant decline in the demand for oil field equipment and that the fair market value of the foam compressors at the time of mediation was between $125,000 and $165,000.

¶29    But the court credited the testimony of Ace West's expert, who "persuasively explained that the values for foam compressor units do not decline in a down oil/gas market as much as values for oil exploration and drilling equipment." This expert explained that because the "foam compressor units are used for keeping gas wells clean and efficient, which is just as important when the prices of oil and gas are dropping, . . . there is a demand for services involving foam compressors even when oil and gas prices are low." The district court found that ACC's expert "failed to take this critical factor into account when he opined that foam compressors dropped in value." It was well within the district court's prerogative as fact-finder to weigh the conflicting evidence and credit the testimony of Ace West's expert over that of ACC's expert.

¶30    More importantly, the district court's factual finding that Ace West's valuation was reasonable was unnecessary to support the ultimate conclusion that the value of the foam compressors was not a term or condition of the settlement agreement. As ACC acknowledges, the record supports the district court's finding that Ace West's belief regarding the value

of the foam compressors was communicated to ACC but that Ace West never guaranteed or warranted the value of the compressors. While ACC argues that there is "no legal distinction between a warranty of value and representation of value in this context," it fails to address the district court's finding that the settlement agreement was not induced by Ace West's representation. The record supports the district court's finding that "the parties all recognized that there was uncertainty about the value of the foam compressors" at the time of mediation. This finding is supported by the MOU itself, which anticipated that the foam compressors could be sold at various prices and made the payment of damages dependent upon the ultimate sale price. In addition, the MOU was "silent as to the appraised or other value of the foam compressors" and there is no evidence that the parties ever discussed "making the value of the foam compressors a term or condition of the agreement." Based on this record, ACC cannot establish that the district court clearly erred in finding that the settlement agreement was not dependent on Ace West's valuation.

¶31    The record supports the district court's finding that there was no misrepresentation or mutual mistake that would void the otherwise enforceable settlement agreement.[3] Therefore, the

---

3. Relatedly, ACC asserts that Ace West should be estopped from withdrawing its representation as to the value of the foam compressors and that the representation should be treated as a term of the contract. Because the equitable estoppel issue was not raised below, it has not been preserved for our review on appeal. *See Help v. Chevron*, 2015 UT 81, ¶ 42, 361 P.3d 63 ("An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." (alteration in original) (citation and internal quotation marks omitted)). We note, however, that any estoppel argument would be undercut by the district court's implicit

(continued…)

district court acted within its discretion in enforcing the settlement.[4]

## CONCLUSION

¶32     The district court acted within its discretion in enforcing the settlement agreement reached during mediation. Accordingly, we affirm.

————————

(…continued)
factual finding that ACC did not rely to its detriment on the representation.

4. Because we uphold the enforcement of the settlement agreement, ACC's challenge to the denial of its motion for summary judgment is moot. Rather than preserving its potential right to appeal this ruling, ACC instead chose to settle its claims against Ace West. "[A]n appeal will be dismissed as moot where the matter raised was settled by agreement resolving all disputed claims between the parties[.]" 5 Am. Jur. 2d *Appellate Review* § 610 (2018). As a result, "our determination that the trial court did not err by enforcing the settlement agreement renders the issues presented in the underlying litigation moot." *Ogden v. Griffith*, 236 P.3d 1249, 1256 (Idaho 2010) (declining to address challenge to denial of summary judgment once settlement agreement was held to be enforceable).