# 2022 UT App 75

## THE UTAH COURT OF APPEALS

PARK PROPERTY MANAGEMENT LLC, AND JOSEPH PARK,
Appellants,
*v.*
G6 HOSPITALITY FRANCHISING LLC,
JACKIE NELON, AND DON FINLEY,
Appellees.

Opinion
No. 20210013-CA
Filed June 16, 2022

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 180401843

Steven R. Sumsion and Cameron Steven Christensen,
Attorneys for Appellants

Mark A. Nickel and Zachary A. Bloomer,
Attorneys for Appellees

JUSTICE DIANA HAGEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.[1]

HAGEN, Justice:

¶1    Park Property Management, LLC and Joseph Park
(collectively, Park Property) appeal the district court's
enforcement of a settlement agreement and dismissal of all claims
with prejudice. Park Property argues that the parties never agreed
to the material terms of the settlement agreement and that the

---

1. Justice Diana Hagen began her work on this case as a judge of
the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on the case
sitting by special assignment as authorized by law. *See generally*
Utah R. Jud. Admin. 3-108(4).

draft of the settlement agreement enforced by the district court included language that "expressly contravened the language of counsel's settlement discussions." We agree with the district court that the material terms of the contract were agreed upon by each party and therefore constituted an enforceable agreement that was later memorialized in writing. We affirm.

BACKGROUND

¶2      Park Property Management LLC filed a lawsuit against G6 Hospitality Franchising LLC, Jackie Nelon, and Don Finely (collectively, G6 Hospitality), alleging claims arising out of a terminated franchise agreement, including a claim that the franchise agreement was void and should be rescinded. G6 Hospitality filed a counterclaim against Park Property Management, LLC, as well as a separate claim against one of its principals, Joseph Park, alleging conduct that violated the franchise agreement.

¶3      On November 20, 2019, after the parties attempted to mediate their dispute, G6 Hospitality offered Park Property a "walk-away" settlement that would require the parties to release all claims and pay their own fees and costs. Counsel for Park Property orally agreed to the offer and memorialized the agreement in an email to G6 Hospitality's counsel. That email stated:

> This communication confirms our conversation today in which I conveyed my clients['] acceptance of G6's offer to settle by each party "walking-[a]way". We have agreed to settle by each party agreeing to release the other for all claims that were or could have been asserted and each paying its own attorneys fees and costs. The parties shall stipulate to dismiss all claims under Rule 41 URCP with each party paying its own fees and costs. You have agreed to draft a proposed settlement agreement

and motion to dismiss. Thank you for working with
us to resolve these matters.

We will refer to the oral acceptance and the foregoing email collectively as the November 20 acceptance.

¶4    G6 Hospitality sent a confirmation email, stating: "This [email] will confirm that your client accepted my client's walkaway offer. As we agreed, my firm will prepare a settlement agreement containing a broad general release, dismissal with prejudice with each party bearing their own fees and costs, and other standard and customary terms found in a settlement of this kind."

¶5    G6 Hospitality prepared a draft of the settlement agreement for Park Property's review. Paragraph four of the draft stated that the indemnification, insurance, post-termination, and confidentiality provisions of the franchise agreement "shall continue in full force and effect." Counsel for Park Property objected to paragraph four, stating, "My clients will not be bound by any provisions of the franchise agreement, including without limitation, [the] indemnification provision."

¶6    Counsel for G6 Hospitality responded that the parties' agreement to dismiss all claims—including those challenging the validity or enforceability of the franchise agreement—necessarily left the franchise agreement intact; in other words, the parties were "back to where they were before the lawsuits were filed, i.e., the franchise agreement was terminated and [Park Property] still owes [G6 Hospitality] the obligations under the franchise agreement as a terminated franchisee." The parties ultimately agreed that the ongoing validity of the franchise agreement was not affected by the settlement agreement because the mutual decision to walk away from all claims meant the franchise agreement remained in place. Nevertheless, "in the spirit of compromise," counsel for G6 Hospitality offered to remove the

references to the post-termination and confidentiality provisions if Park Property "confirm[ed] their indemnity obligations."[2]

¶7      On December 9, Park Property's counsel responded, "My client will sign the Settlement Agreement with the indemnification provision," if G6 Hospitality removed the names of individuals who were not parties to the lawsuit, including Joseph Park's father. Counsel continued, "Once I get the revised Agreement, I will have my clients sign and we can then file the joint Motion to Dismiss with Prejudice."

¶8      On January 26, 2020, G6 Hospitality sent a final version of the settlement agreement (the January 26 document) to Park Property; the document included the indemnification, insurance, post-termination, and confidentiality provisions, even though G6 Hospitality had agreed on December 9 to remove the post-termination and confidentiality provisions. Park Property refused to sign the agreement and offered no explanation for its refusal. In April 2020, Park Property retained new counsel, who requested that the parties set aside the settlement and allow Park Property to file a motion for summary judgment. G6 Hospitality rejected that request and asked for assurance that the settlement would be honored. Rather than respond, Park Property filed a motion for partial summary judgment.

¶9      G6 Hospitality filed a motion to enforce the settlement and dismiss all claims with prejudice.[3] G6 Hospitality argued that the

---

2. The compromise offered by G6 Hospitality made no mention of the insurance provision, and that provision was ultimately included in the written settlement agreement signed by the parties. On appeal, Park Property has not challenged the inclusion of the insurance provision.

3. G6 Hospitality also moved to stay Park Property's motion for partial summary judgment on the basis that the court's ruling on the motion to enforce could render Park Property's motion moot.

(continued…)

parties had entered into a binding agreement on November 20, 2019, and that the January 26 document included the material terms of the agreement—namely, that the parties agreed to walk away from each of their respective claims and to pay their own attorney fees and costs.

¶10 Park Property opposed the motion, essentially arguing that the November 20 acceptance amounted to an agreement to enter into a "future settlement agreement" and therefore was not enforceable. Park Property asserted, without evidentiary support, that the parties "disagree[d] over important elements of a settlement, including whether post-termination, indemnification, and confidentiality terms should be included; whether the Franchise Agreement should continue in force; and whether [Joseph Park's father] should have to sign and how much compensation he would be paid." Park Property did not assert that G6 Hospitality had agreed to remove the post-termination and confidentiality provisions from their written settlement agreement, nor did it include the email in which G6 Hospitality offered to remove those provisions.

¶11 In reply, G6 Hospitality argued that the parties reached an agreement on December 9 that the provisions in the franchise agreement remained in effect. G6 Hospitality attached a declaration of its counsel, which described the conversation its counsel had with Park Property's counsel, as well as the email in which Park Property agreed to include the indemnification provision. Park Property did not offer any evidence to refute the declaration or the email.

¶12 After hearing argument on the motion to enforce, the district court granted the motion, enforced the settlement, and dismissed all claims with prejudice. The court determined that the November 20 acceptance represented "a binding and enforceable settlement agreement" because "the language [was] clear and

The district court agreed and stayed briefing on the summary judgment motion.

definite as to all integral terms that the parties intended to and did agree to," namely, the "walk-away" agreement and the agreement that each party pay its own attorney fees and costs. The court also determined that the agreement "did not require a formal written and signed agreement for [the terms] to be binding and enforceable—even though the parties clearly intended to do so." In addition, "any concerns about the viability of the subject franchise agreement" did not affect the binding nature of the settlement agreement because "those concerns were clearly resolved" by December 9, 2019, when each party "agreed that the subject franchise agreement remained valid and enforceable."

¶13     After the district court announced its ruling that the settlement agreement was enforceable, G6 Hospitality requested that the court order the parties to sign the January 26 document. Park Property objected, arguing that requiring the parties to sign the draft would be "highly inappropriate" because, based on the ruling, "the email[] is enforceable as the settlement agreement itself and that is the governing document, not proposed terms that went on in negotiation for month after month." The court disagreed with Park Property and ordered the parties to sign the settlement agreement "as it existed at the time of the December 9th and December 11th conversations" between counsel. In its written ruling, the court specifically ordered the parties to sign the January 26 document.

¶14     Following this ruling, G6 Hospitality moved for attorney fees and costs related to the motion to enforce, arguing that the written agreement that the court had ordered the parties to sign allowed the prevailing party "in any lawsuit or other dispute arising out of or in connection with *the enforcement of this* [*agreement*] . . . to recover their costs and reasonable attorneys' fees from the non-prevailing" party. (Emphasis added.) In opposition, Park Property argued that "the fees were not reasonably necessary as G6 [Hospitality] refused to comply with its own obligations to remove the confidentiality and post-termination provisions from the Formal Settlement Agreement" and that they were incurred in connection with executing rather than enforcing

the settlement agreement. Park Property also argued that the January 26 document included provisions that were not agreed upon and, for the first time, provided the emails containing G6 Hospitality's offer to remove the enforcement of the franchise agreement's post-termination and confidentiality provisions if Park Property agreed to include the indemnification provision.

¶15 The district court awarded G6 Hospitality the attorney fees and costs it incurred in enforcing the settlement agreement. In that order, the court determined that some of Park Property's arguments against the motion for attorney fees "constitute[d] an invitation for the Court to reconsider" its prior ruling on the motion to enforce. The district court declined to reconsider that prior ruling.

ISSUES AND STANDARDS OF REVIEW

¶16 Park Property now appeals and argues that the district court committed two errors in enforcing the settlement agreement. First, Park Property argues that the court should not have concluded that the November 20 acceptance was enforceable because there was "a lack of meeting of the minds, lack of agreement on substantial issues, and references to a future agreement." Second, and relatedly, Park Property argues that the court erred in concluding that the January 26 document was binding and enforceable because it "expressly contravened language of counsel's settlement discussions."

¶17 "In general, a trial court's enforcement of a settlement agreement will not be reversed on appeal unless it is shown that there was an abuse of discretion." *Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, ¶ 10, 374 P.3d 1064 (cleaned up). But because settlement agreements are governed by contract principles, "the underlying issue of whether a contract exists may present both questions of law and fact, depending on the nature of the claims raised." *LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 13, 221 P.3d 867 (cleaned up). "Questions of contract

interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995) (cleaned up). In contrast, "whether the parties had a meeting of the minds sufficient to create a binding contract is an issue of fact, which we review for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Patterson v. Knight*, 2017 UT App 22, ¶ 5, 391 P.3d 1075 (cleaned up).

¶18 Some cases have suggested that a non-deferential standard of review applies—even to questions of fact—where the district court's decision to enforce a settlement agreement rests solely on documentary evidence. In *Sackler*, for example, our supreme court reviewed the enforcement of a settlement agreement for correctness because "the trial court based its decision solely on the documents constituting the correspondence between the parties" and "took no extrinsic evidence." 897 P.2d at 1220. Similarly, in *Lebrecht*, this court afforded no deference to the district court's determination that a settlement was reached because the decision was based on a transcript of the negotiation and list of terms compiled by the parties. 2016 UT App 110, ¶ 10. This court reasoned that an appellate court was "in as good a position as the [district] court to examine" the documentary evidence in determining whether a settlement was reached. *Id.* (citing *State v. Arriaga-Luna*, 2013 UT 56, ¶ 8, 311 P.3d 1028 (stating that "because we are in as good a position as the [district] court to examine the transcript" and determine what the law is, "we owe the [district] court no deference")).

¶19 Here, the district court's decision was based on the email correspondence between the parties' attorneys and the uncontested declaration of G6 Hospitality's counsel. Arguably, we are in as good a position as the district court to determine whether a binding settlement agreement was reached based on that documentary evidence. But to the extent the district court could draw competing inferences from that evidence, we may

owe deference to the inferences the district court drew. Ultimately, however, we need not definitively resolve the uncertainty in the caselaw regarding the proper standard of review because, in this case, the outcome is the same no matter which standard of review we apply. For the reasons discussed below, even reviewing the district court's decision for correctness, we conclude that the parties had a meeting of the minds as to the essential terms of the settlement agreement.

ANALYSIS

## I. The Parties Entered into a Binding Settlement Agreement on November 20, 2019.

¶20    Park Property contends that there was no meeting of the minds as to the material terms of the settlement agreement and that the November 20 "email correspondence did not (and cannot) constitute a binding contract because both Parties manifested [a] clear intention to defer legal obligations until an agreement was put into writing, reviewed[,] and accepted." We disagree.

¶21    "Settlement agreements are governed by the rules applied to general contract actions." *Patterson v. Knight*, 2017 UT App 22, ¶ 6, 391 P.3d 1075 (cleaned up). "A binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced." *ACC Cap. Corp. v. Ace West Foam Inc.*, 2018 UT App 36, ¶ 12, 420 P.3d 44 (cleaned up). "A contract may be enforced even though some contract terms may be missing or left open to be agreed upon," so long as "the essential terms are [not] so uncertain" that there would be "no basis for deciding whether the agreement ha[d] been kept or broken." *See Patterson*, 2017 UT App 22, ¶ 6 (cleaned up).

¶22    Here, G6 Hospitality extended a "walk-away" offer to Park Property. Park Property's counsel called G6 Hospitality's counsel

to accept that offer, and each party's counsel memorialized that phone call in an email, stating that both parties had agreed to the "walk-away" offer and to dismiss all claims with prejudice. The material terms of the settlement were set forth in Park Property's own November 20 email: "We have agreed to settle by each party agreeing to release the other for all claims that were or could have been asserted and each paying its own attorneys fees and costs." These terms constitute the integral features of the settlement agreement and are sufficiently definite as to be capable of being enforced.

¶23   In arguing that the November 20 acceptance does not constitute a binding agreement, Park Property relies on evidence that the parties contemplated a more formal written settlement agreement. Specifically, G6 Hospitality's email on November 20 stated, "As we agreed, my firm will prepare the settlement agreement containing a broad general release, dismissal with prejudice with each party bearing their own fees and costs, and other standard and customary terms found in a settlement of this kind."

¶24   The mere fact that the parties "contemplated future preparation of more formal settlement documents does not undercut the district court's conclusion that the [November 20] agreement was enforceable." *See ACC Cap. Corp.*, 2018 UT App 36, ¶ 22. Indeed, it is well established that settling parties' contemplation of "subsequent execution of a written instrument as evidence of their agreement d[oes] not prevent [an] oral agreement from binding the parties." *Lawrence Constr. Co. v. Holmquist*, 642 P.2d 382, 384 (Utah 1982); *see also id.* ("If a written agreement is intended to memorialize an oral contract, a subsequent failure to execute the written document does not nullify the oral contract.").

¶25   But Park Property argues that the parties did not merely contemplate memorializing their oral agreement in writing; rather, it contends that the parties "clearly manifest[ed] the intention to defer legal obligations until [a] writing [was] made."

In making this argument, Park Property relies on *Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, 374 P.3d 1064, and *Sackler v. Savin*, 897 P.2d 1217 (Utah 1995). Both cases are readily distinguishable from the present case.

¶26 In *Lebrecht*, the parties met individually, without counsel present, to negotiate a potential settlement agreement. 2016 UT App 110, ¶ 3. During the negotiations, the parties wrote down certain figures, payment schedules, and interest rates on a "Term Sheet," which the parties initialed or signed. *Id.* The Term Sheet consisted of "bullet-point terms and phrases" that "lack[ed] specific identifying information, including for which party each term applie[d]." *Id.* ¶ 15. An audio recording of the meeting revealed that "each time the parties appeared to agree on a term, they continued to negotiate other terms or conditions, sometimes revisiting terms previously decided." *Id.* ¶ 17. And the parties expressly deferred agreement on certain terms, such as a "mutual confidentiality clause" for which the plaintiff suggested, "We'll just see what that looks like in writing." *Id.* ¶ 20 (cleaned up). Additionally, the defendant stated "on several occasions that he wanted to discuss the negotiated terms with his lawyer before signing an agreement," and the plaintiff assured him that the Term Sheet was not binding. *Id.* ¶ 19.

¶27 On those facts, this court reversed the district court's conclusion that the negotiations memorialized in the Term Sheet constituted a binding agreement. *Id.* ¶ 15. This court concluded that "the parties may have agreed on some of the essential terms of their settlement," but they also "agreed to defer certain terms, such as a confidentiality clause, until an agreement was drafted." *Id.* ¶ 23. "At no point did either party definitely agree their dispute was settled; rather, they made clear their intention to enter into a written settlement agreement in the future." *Id.* Therefore, this court concluded that "the parties did not merely intend to memorialize an oral contract but planned to defer their legal obligations until the settlement was drafted." *Id.*

¶28    And in *Sackler*, the parties entered into an "oral partnership agreement . . . for the purpose of acquiring a condominium unit" at a ski resort. 897 P.2d at 1218. At some point, "Savin began personally occupying the unit on occasion, and a dispute arose over how much Savin should pay for his personal use." *Id.* Savin's counsel sent a letter to Sackler with a "proposal" that "expressly stated that 'should the general terms of this letter be acceptable,' then the parties could 'proceed to a formal agreement.'" *Id.* Sackler's counsel responded and accepted part of the proposal, but also proposed additional terms. *Id.* The parties then went back and forth with additional terms and monetary figures regarding the personal use of the property and whether Sackler would personally retain the payments for Savin's use or whether those payments would go to the partnership. *Id.* at 1218–20 (cleaned up). There were also discussions and proposals regarding the sale of the unit and the effect of applying certain amounts of the sale to pay for Savin's use of the unit. *Id.* at 1219–20. Eventually, while the parties were still in dispute about the terms of a settlement agreement, Sackler sued Savin for "breach of contract, forgery and conversion, injunctive relief, and an accounting." *Id.* at 1220 (cleaned up). Sackler then moved to enforce the settlement agreement, which the court denied, ruling that "no settlement agreement had been reached." *Id.*

¶29    On appeal, the Utah Supreme Court affirmed the district court's denial. The court determined that the original settlement offer "contemplated that the parties would not enter an agreement until sometime in the future" because it "provided that *if* the terms of the letter were acceptable, then the parties *could 'proceed to a formal agreement.'" Id.* at 1221 (emphases added). In response, Sackler had provided "counterproposals" and asked Savin to "please call" if those counterproposals were "acceptable" so that the attorney could "prepare an agreement." *Id.* The court determined that, based on these communications, "the parties had not come to an agreement on the essential terms of the contract." *Id.* at 1221–22.

¶30 In contrast to both *Lebrecht* and *Sackler*, the parties here definitively agreed to walk away from all claims, dismissing those claims with prejudice and paying their respective costs and fees. Those terms were unambiguous and plainly applied to both parties. And neither party made any counterproposal at the time of the November 20 acceptance. Instead, they unconditionally stated that they had "agreed to settle by each party agreeing to release the other for all claims that were or could have been asserted and each paying its own attorneys fees and costs." Although they expressed an understanding that their agreement would be memorialized in a written settlement agreement, there was no suggestion that the parties' agreement to settle was contingent on any future events.

¶31 Despite the unqualified November 20 acceptance, Park Property contends that the agreement could not be enforced because a later dispute arose regarding additional terms of the written agreement—namely, whether non-parties to the lawsuit could be considered released parties under the settlement agreement, whether the underlying franchise agreement was affected by the settlement agreement, or whether an indemnification provision should be included. Park Property claims the ongoing discussions demonstrate that there was no meeting of the minds on material terms necessary to the settlement agreement. Even if the additional terms were material to the walk-away settlement agreement reached on November 20, the declaration of G6 Hospitality's counsel reflected a meeting of the minds on those additional terms no later than December 9. In other words, by December 9, the parties had agreed not only to the terms of the November 20 acceptance, but also to those additional terms that Park Property claims were material to the settlement agreement. As explained below, at the time of the court's ruling, the declaration of G6 Hospitality's counsel stood unrebutted. Based on that undisputed evidence, the district court correctly concluded that the parties had a meeting of the minds on all material terms of the settlement agreement no later than December 9 and that those terms were sufficiently definite to be enforced.

## II. The January 26 Document Reflected the Terms of the Settlement.

¶32    Park Property also argues that the district court erroneously determined that, as of December 9, 2019, the parties had agreed to the form of the January 26 document.[4] Again, we disagree.

¶33    Although the district court found that the parties entered into an enforceable settlement agreement on November 20, it nevertheless ordered the parties to sign the January 26 document because it found that it accurately represented the parties' agreement. Park Property argues that this was error because the January 26 document contained provisions regarding the franchise agreement's post-termination and confidentiality clauses that the parties had agreed to remove. As evidence, Park Property points to G6 Hospitality's email offering to remove those provisions from the settlement agreement in exchange for Park Property's agreement to retain the indemnification language.

---

4. G6 Hospitality argues that this court lacks jurisdiction to hear this issue because it arises from the district court's June 5 ruling on the motion to enforce and the notice of appeal referenced only the December 1 ruling on the motion for attorney fees. G6 Hospitality is mistaken. In its notice of appeal, Park Property stated that it appealed from "the entire judgment, which was entered on December 1, 2020." Having referenced "the entire judgment" in its notice of appeal, Park Property necessarily included the interlocutory orders that were a step toward that final judgment, including the June 5 order. *See Butler v. Corporation of President of Church of Jesus Christ of Latter-day Saints*, 2014 UT 41, ¶ 24 n.6, 337 P.3d 280 (explaining that under the merger of judgments doctrine, "once final judgment is entered, all preceding interlocutory rulings that were steps towards final judgment merge into the final judgment and become appealable at that time" (cleaned up)).

¶34   G6 Hospitality argues that this issue was not preserved below. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (cleaned up). "To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (cleaned up). "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *Id.*

¶35   Although Park Property timely objected to signing the January 26 document at the hearing on the motion to enforce, the reason it gave had nothing to do with the inclusion of the post-termination and confidentiality provisions. Instead, it argued that because the court had found that an enforceable settlement agreement had been reached no later than December 9, there was no need for an additional signed document to enforce those terms, especially when the document included "proposed terms that went on in negotiation for month after month." Park Property never asked the court to strike the post-termination and confidentiality provisions.[5]

¶36   It was not until its opposition to G6 Hospitality's motion for attorney fees that Park Property presented evidence of conflicting terms between the January 26 document and the parties' earlier discussions. In its written ruling, the district court

---

5. Park Property argued only that the parties "just simply did not have a meeting of the minds on the . . . relevant terms." As examples, it noted that "the franchise agreement actually became a very significant debate between the parties with indemnity provisions, with post-termination requirements with the addition of these other parties."

characterized Park Property's argument as a motion to reconsider and declined to reconsider its prior ruling.

¶37 The denial of a motion to reconsider is reviewed for abuse of discretion. *See State v. Ruiz*, 2012 UT 29, ¶ 23, 282 P.3d 998 (explaining that "it is within the sound discretion of a trial court judge to grant a motion to reconsider" and that appellate courts "will not disturb a district court's decision to grant or deny such motion absent an abuse of discretion"). But on appeal, Park Property has not argued that the district court abused its discretion in declining to reconsider its prior ruling. Instead, Park Property merely challenges the original ruling that required it to sign the January 26 document. At the time of its original ruling, however, the district court had no evidence that the January 26 document conflicted with the terms to which the parties had agreed. Therefore, we affirm the district court's order directing the parties to sign the January 26 document based on the record before the court at the time of its ruling.

### III. G6 Hospitality Is Entitled to Attorney Fees.

¶38 G6 Hospitality has requested its attorney fees on appeal. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Mardesich v. Sun Hill Homes LC*, 2017 UT App 33, ¶ 21, 392 P.3d 950 (cleaned up). Park Property has not challenged the award of attorney fees to G6 Hospitality below and has not argued against such an award for fees incurred on appeal. Accordingly, we remand to the district court to calculate an award of attorney fees reasonably incurred by G6 Hospitality on appeal.[6]

---

6. In Park Property's opening brief, it requests that we "reverse the trial court's June 5, 2020 and December 1, 2020 orders and remand for further proceedings." To the extent Park Property challenges the award of attorney fees from the December 1, 2020 order, Park Property has not provided any argument to show that

(continued…)

CONCLUSION

¶39    Park Property has not shown that the district court erred in enforcing the settlement agreement. The record supports the district court's determination that the November 20 acceptance constituted a meeting of the minds as to the material terms of the settlement agreement. Park Property did not raise a timely objection asserting that the January 26 document contained provisions that the parties had agreed to omit, and it has not argued on appeal that the district court abused its discretion when it later declined to reconsider its ruling ordering the parties to sign that document. Accordingly, we affirm the district court's order enforcing the settlement agreement and ordering the parties to sign the January 26 document, and we remand to the district court to award G6 Hospitality the attorney fees it reasonably incurred on appeal.

————————

fees were improperly awarded to G6 Hospitality and has not carried its burden of persuasion on appeal. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196; *see also* Utah R. App. P. 24(a)(8).